UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANNON SCIPIONE,                              CASE NO.: 8:12-CV-687-AEP

            Plaintiff,

v.

ADVANCE STORES COMPANY, INC.,
d/b/a ADVANCE AUTO PARTS,

            Defendant.
_____/

## DEFENDANT, ADVANCE STORES COMPANY, INCORPORATED'S MOTION TO IMPOSE SANCTIONS ON PLAINTIFF FOR COMMITTING FRAUD ON THE COURT AND DISCOVERY VIOLATIONS

Defendant, Advance Stores Company, Incorporated ("Advance"), pursuant to Rules 37(b)(2) and 37(c)(1), Federal Rules of Civil Procedure, moves to impose sanctions on Plaintiff, Shannon Scipione ("Scipione") for committing fraud on the court and for discovery violations. In support thereof, Advance states as follows:

This is a commercial premises liability case. Scipione alleges she slipped and fell in "an oily substance on the pavement" in the parking lot at Advance's auto parts store (# 9494) at 6301 Park Boulevard, Pinellas Park, Pinellas County, Florida on February 23, 2011. Advance respectfully urges the Court to impose sanctions against Scipione. She sentiently set in motion an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate this matter. She methodically hid from Advance evidence of pre-existing medical conditions, prior injuries, medical care and post-accident injuries. She failed to disclose to her treating physicians any of her prior injuries or medical care, thereby misleading those doctors who mistakenly opined that the injuries she claims in this case were caused by the Advance Auto

Parts store accident.

In Scipione's October 22, 2012 answers to interrogatories (**Exhibit A),** interrogatory no.

8, she described her alleged injuries from the Advance Auto Parts store accident:

> I was diagnosed with post traumatic left knee capsular
> sprain/strain, as well as left leg trauma and associated pain. I
> underwent a left knee arthroscopy on May 25, 2011 in which the
> posterior horn medial meniscus tear in her left knee was repaired.
> Once inside of the knee, Dr. Tedder found that the knee was more
> damaged than what was revealed on the MRI and performed a
> procedure called debridement in which the infected and dead tissue
> was removed.  On September 24, 2011, I underwent a 2nd left
> knee arthroscopy to repair more damage that was done to my knee.
> I continue to treat for follow up appointments and therapy.

She calculated her claim for past lost wages to be  $12,125.84 in her answer to interrogatory no.

9, itemized as follows:  "926 hours lost @ $12.93 per hour from 1/4/11 to 3/14/11 and $13.72 per

hour from 8/10/12 to 9/21/12 and $13.19 per hour from 7/21/11 to 10/18/11."  She said her

future lost wages were "unknown."  Scipione itemized her past medical expenses in her answer

to interrogatory no. 10:

| MEDICAL PROVIDER | AMOUNT CHARGED |
|---|---|
| Sunshine City Emergency Physician | $612.00 |
| St. Petersburg General Hospital | $42,870.97 |
| Babat, Katz & Honeycutt, M.D.S., P.A. | $58.46 |
| Bay Sports Orthopedic Specialists | $20,550.00 |
| Tampa Bay Imaging | $1,850.00 |
| Back & Neck Pain Clinic | $2,355.00 |
| TOTAL TO DATE AND CONTINUING: | $68,897.23[1] |

---

[1] Scipione served supplemental Rule 26 initial disclosures on October 10, 2012 (**Exhibit B**).  She calculated her past medical expenses then to be $117,002.16, not $68,897.23.  She never explained why she later reduced the total in her answers to interrogatories.  In those initial disclosures, Scipione also estimated her future medical expenses would be $35,000.00.

2

Scipione denied she was "suffering from physical infirmity, disability, or sickness at the time of the incident described in the complaint" in her answer to interrogatory no. 4.  She denied any aggravation of a pre-existing physical injury in her answer to interrogatory no. 16 and denied any accident requiring medical care in the past 10 years in her answer to interrogatory no. 23.  In her answer to  interrogatory no. 11, she purported to list all physicians, mental health professionals, medical facilities, or other health care providers by whom or at which she had been examined or treated in the past 10 years.  The only health care providers she listed in her answer were the six she had already identified in her answer to interrogatory no 10 - - for treatment of the injuries she claims from the accident in this case.

Based on Scipione's answers to interrogatories, it appeared she received no other medical care for the past 10 years.  It also appeared she had no other accidents or injuries in the preceding 10 years and that she did not suffer from any pre-existing physical condition that was aggravated by the February 23, 2011 slip and fall.  Her lost wages were all attributable to the Advance Auto Parts store accident.  Scipione, now 29 years old, therefore portrayed herself as a healthy young woman with no medical history and no prior injuries or pre-existing conditions.  Scipione tried to hide the truth, but diligent investigation and discovery by Advance established that Scipione was anything but healthy.  She had a multitude of serious debilitating medical conditions requiring hospitalizations, paramedics, ambulance transportation and regular medical care.  Moreover,

---

Moreover, inexplicably, in those initial disclosures, Scipione identified seven health care providers who she failed to  list only 12 days later in her answer to interrogatory no. 10.  Scipione supplemented her answer to interrogatory no. 10 in supplemental answers to interrogatories she served on November 16, 2012 (**Exhibit C**) by providing dates of service for each of the six providers but she did not identify any other health care providers in those supplemental answers.

C A R L T O N   F I E L D S , P. A .
Suite 4200 - 100 Southeast Second Street - Miami - Florida  33131-9101 - 305.530.0050

contrary to her answers to interrogatories, she had injured her knee on at least two occasions before the Advance Auto Parts accident and twice afterward.

A.      **SCIPIONE FAILED TO DISLCOSE HER HEALTH CARE PROVIDERS**

Prior to her November 15, 2012 deposition, Scipione identified only her treating physicians for the Advance Auto Parts store accident.  At her deposition, she reconfirmed that her answers to interrogatories were full, complete and truthful and that there was nothing in them that needed to be changed:

> Q Now, you had a chance to look at those answers to interrogatories that -- that you signed off on. Before we talk about those, and I want to be clear, I do not want to know anything, not one word of what you told your lawyer.
>
> **A Okay.**
>
> Q Okay? I just need to be -- I need to confirm, though, that the information that you provided to your lawyer was truthful.
>
> **A Yes.**
>
> Q And it was full and complete and truthful to the best of your knowledge?
>
> **A Yes.**
>
> Q And you swore under oath that those answers were true and correct?
>
> **A Yes.**
>
> Q Okay. And is that still your position that they are true and correct under penalty of perjury?
>
> **A Yes.**
>
> Q Okay. Is there anything in those answers, that as you look back on it now, that you either were untruthful about or that you need to change?

CARLTON FIELDS, P.A.
Suite 4200 - 100 Southeast Second Street - Miami - Florida  33131-9101 - 305.530.0050

**A No.**[2]

Scipione then testified specifically that her answer to interrogatory no. 11 (health care providers

for the previous 10 years) was "true and correct under penalty of perjury."[3]

When pressed further by counsel for Advance, Scipione admitted that she knew her

answer to interrogatory no. 11 was not correct or truthful.  She acknowledged that the answer

wrongly depicted her as a healthy woman who required no medical care before the Advance

Auto Parts store accident.[4]  She then explained:

> Q . . . I asked you earlier whether you were truthful and honest
> with your attorney and gave him full information. And what was
> your answer?
>
> **A Yes.**
>
> Q And were you, now looking back on it?
>
> **A No.**
>
> Q Why not?
>
> **A I can't answer that.**
>
> Q Okay. What do you mean?
>
> **A I don't know.**[5]

The truth was far different.  The following is a partial list of the health care providers and

treatment that Scipione knowingly failed to disclose. Advance that list after first procuring by

subpoena records from Scipione's employers, insurers and pharmacies.  None of the providers

treated Scipione for the injuries she alleges from the Advance Auto Parts store accident:[6]

---

[2] November 15, 2012 Deposition of Shannon Scipione at pp. 54-55 (**Exhibit D**).
[3] *Id*. at pp. 76-78.
[4] *Id*. at pp. 78-79.
[5] *Id*. at pp. 93-94.
[6] The list is incomplete because Advance is still collecting Scipione's medical records.  Some providers have not yet complied with Advance's pre-discovery deadline subpoenas.  Some of the

5

- Lakeside Occupational Largo:   10/7/2009, 10/12/2009, 10/20/2009, 10/27/2009, 11/3/2009, 11/18/2009 (care and treatment for 10/6/2009 left knee injury)

- Signet Diagnostic Imaging Services:  10/27/2009 (MRI of left knee)

- Florida Hospital Carrollwood:  6/3/2003 (cervical x-ray due to pain from motor vehicle accident)

- University Community Hospital: 6/3/2003 (post-motor vehicle accident care)

- Pinellas County Emergency Medical Services:   12/23/2010 (transport to Mease Countryside Hospital for abdominal pain); 5/13/2012 (transport to Northside Medical Center Hospital for cardiac palpitations, shortness of breath, dizziness)

- Professional Health Care of Pinellas:  2/23/2012 (sore throat); 2/2/2012 (diabetes); 1/26/2012 (diabetes)

- St. Petersburg General Hospital ER: 1/16/2012 (abdominal pain, vomiting, hyperglycemia); 12/20/2010 (abdominal pain, vomiting, hyperglycemia)

- St. Joseph's Hospital:  11/16/2004

- Tampa General Hospital: 12/21/2010 (abdominal pain)

- Kim B. Powers, D.O.:  1/24/2012 (diabetes)

- HealthNow Family + Urgent Care LLC:  7/9/2012 (diabetes); 7/23/2012 (diabetes); 8/10/2012 (sore throat); 9/22/2012 (diabetes medication giving her nausea); 10/5/2012 (diabetes, sore throat); 10/15/2012 (scabies, diabetes, sore throat); 11/15/2012 (diabetes, scabies, annual physical exam); 11/30/2012 (mood swings, depression, fatigue, herpes)

- Mease Countryside Hospital:  8/25 - 8/31/2009 (admission for pneumonia); 12/23 - 12/24/2010 (admission for abdominal pain, vomiting, diabetes, ureteral calculus, cystourethroscopy, left ureteral double j-stent placement); 1/12/2011 (calculus of kidney, lithotripsy, history of migraines, diabetes); 1/20 – 1/21/2011 (abdominal pain, pyelonephritis, calculus of kidney, diabetes); 2/9 – 2/10/2011 (lithotripsy, cystourethroscopy, calculus of kidney)

- Urology Specialists of West Florida: 1/4/2011 (hospital follow-up, kidney stent, kidney stone; taking oxycodone; excessive thirst, nausea/vomiting; headaches; painful urination; back pain; fatigue); 1/25/2011 (stent pain and bladder spasms; taking Percoset); 2/1/2011

---

information Advance has about a particular provider is incomplete, typically because the information it has was obtained from the file of another health care provider for Scipione. In addition, Advance was granted leave on February 20, 2013 to serve subpoenas on the health care providers Scipione belatedly disclosed in her answers to Advance's second set of interrogatories.

6

C A R L T O N   F I E L D S , P . A .
Suite 4200 - 100 Southeast Second Street - Miami - Florida  33131-9101 - 305.530.0050

(stent pain, bladder spasms, taking Vicodin); 2/21/2011 (post-operative examination; taking Vesicare and Vicodin)

- Northside Hospital & Heart Institute:  6/14/2012 (confusion, low blood sugar, diabetes, dizziness, trembling, shakes, trouble concentrating; 5/13/2012 (dizziness); 2/14/2012 (shortness of breath, malaise/fatigue; 11/20/2010 (pelvic pain, ovarian cyst)

- M.L. Saperstein, M.D.:  5/23/2003, 7/19/2003 (gynecological)

- Baycare Outpatient Imaging – Trinity:  1/19/2007 (wrist x-rays); 11/17/2008 (left knee x-rays, 3 views); 1/3/2011 (abdomen x-ray); 1/25/2011 (abdomen x-ray); 2/1/2011 (abdomen x-ray); 2/21/2011 (abdomen x-ray)

- Morton Plant Mease Outpatient Center

- Morton Plant Mease Primary Care Center:   8/1/2003 (attention deficit disorder); 8/20/2003 (attention deficit disorder)

- MPM Immediate Care Center:  8/29/2009

- Chirag N Patel, M.D., Hernando Pasco Primary Care:  9/25/2008 (prescribed left knee x-rays)

- Diana L. Pollock, M.D.:  9/3/2003 (hyperkinetic disorder with developmental delay)

- Florida Behavioral Medicine

- Morton Plant North Bay

- Morton Plant Hospital

- Helen Ellis Memorial Hospital

- Regional Medical Center – Bayonet Point[7]

Even though she knew her answer to interrogatory no. 11 was not truthful, Scipione never supplemented her answers as she was obligated to do pursuant to Rule 26(e)(1), Fed.R.Civ.P. Therefore, Advance served a second set of interrogatories on December 13, 2012 (**Exhibit E**), that among other things asked:

---

[7] The latter five providers were first disclosed by Scipione on February 14, 2013.

C A R L T O N   F I E L D S, P. A .
Suite 4200 - 100 Southeast Second Street - Miami - Florida  33131-9101 - 305.530.0050

> Identify all health care providers you failed to disclose in your previous answers to Defendant's September 18, 2012 interrogatories and provide for each your explanation for why you failed to disclose.
>
> Identify all health care providers from whom you have received any medical, chiropractic, osteopathic and/or mental health attention October – December 2012 and January 2013.

Scipione failed to serve answers.  Advance filed a motion to compel [D.E. 34].  Two weeks later and well after the February 1, 2013 discovery deadline, Scipione served her answers (**Exhibit F**). She listed 13 health care providers and explained that her previous answers were made to the best of her recollection, that information was "inadvertently omitted" but that it was not done intentionally.

What is truly remarkable is that much of the medical care Scipione omitted from her original answers to interrogatories and at her deposition occurred in close temporal proximity to her October 22, 2012 answers and her November 15, 2012 deposition.  For example, only five months before her answers, she was transported in an ambulance by Pinellas County Emergency Medical Services to Northside Medical Center Hospital.  A week before her answers she was treated at  HealthNow Family + Urgent Care and on the day of her deposition she was examined there for diabetes and scabies.

### B.    SCIPIONE DELIBERATELY FAILED TO DISLCOSE HER OTHER KNEE INJURIES TO ADVANCE AND HER TREATING PHYSICIANS

The evidence Advance collected independently indicates that Scipione had a history of injuries to her left knee that preceded the Advance Auto Parts store accident.  Likewise, after the alleged accident, Scipione re-injured her knee on two separate occasions.  More evidence is being gathered to further substantiate those other injuries, but it is clear that Scipione did not want Advance or her treating doctors to know about all of them.

She insisted at her deposition that there was nothing wrong with her knee before February 23, 2011:

> Q . . . So you had no preexisting condition with regard to your knee; is that correct? Your left knee, it was fine, as far as you were concerned?
>
> **A Yes.**
>
> Q No problem with it?
>
> **A Correct.**[8]
>
> * * *
>
> **A There was nothing wrong with my knee.**
>
> Q So you weren't injured?
>
> **A No.**[9]
>
> * * *
>
> Q Did you get an MRI of your knee?
>
> **A No.**
>
> Q Never before February 23rd, 2011?
>
> **A No.**[10]
>
> * * *
>
> **Q** All right. Now, I want to be clear now. You've answered -- you've given your corrections to the answers to interrogatories. Without regard to the answers to interrogatories, can you think of any other injury, illness, disease or health care provider for the last ten years that you haven't disclosed?
>
> **A No.**[11]

---

[8] November 15, 2012 Deposition of Shannon Scipione at p. 99.
[9] *Id*. at p. 101.
[10] *Id*. at p. 102.
[11] *Id*. at p. 112.

C A R L T O N   F I E L D S, P. A.
Suite 4200 - 100 Southeast Second Street - Miami - Florida  33131-9101 - 305.530.0050

Following some difficult questioning at her deposition, Scipione finally admitted she made a worker's compensation claim for an injury to her left knee in 2009, but insisted she never had any medical care before that:

> Q And as far as you're concerned, you were a picture of health before 2009? No medical care other than the one OB-GYN visit?
>
> **A Not that I can recall.**[12]

Scipione not only hid her 2009 knee injury from Advance, she admitted she hid it from all of the doctors who treated her for the Advance Auto Parts store accident:

> Q Now, you've seen a variety of doctors since February 23rd, 2011. How many of those doctors total did you share with them information about your workers' compensation accident?
>
> **A I -- I don't know.**
>
> Q You didn't share it with any of them, did you?
>
> **A Probably not.**
>
> Q How many of them did you tell that you had an MRI of your left knee?
>
> **A None.**
>
> Q How many of them did you show the MRI film of your left knee from 2009?
>
> **A None.**
>
> Q How many of them did you show the MRI report from 2009?
>
> **A None.**
>
> Q When they asked you about prior problems with your knee, what did you tell them?
>
> **A Nothing.**
>
> Q What did you say? You had no problems, right?

---

[12] *Id.* at p. 131.

C ARLTON F IELDS, P. A .
Suite 4200 - 100 Southeast Second Street - Miami - Florida 33131-9101 - 305.530.0050

**A Right.**

* * *

Q Okay. They specifically -- each of the doctors you saw specifically asked you, did they not, about any prior history of problems with your left knee; isn't that correct?

**A Yes.**

Q Okay. And what was your answer for each of them?

**A No.**

Q You didn't mention anything, did you?

**A Nope.**[13]

Scipione's failure to disclose prior injuries to her left knee was part of an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate this matter.  It had a material impact on the opinions rendered by her treating physicians as to causation.[14]  They relied on the history she gave them of no prior knee injuries.

Contrary to Scipione's answers to interrogatories and deposition testimony, she had an MRI of her left knee on October 27, 2009, after she injured it at work on October 6, 2009.  That MRI report said:

> No overt torn meniscus, but <u>the anterior horn of the medial meniscus appears smaller than the posterior horn suggesting mild residual posttraumatic change.</u> Intact anterior and posterior cruciate

---

[13] *Id*. at pp. 134-35.

[14] Scipione did not make expert disclosures for any of her treating doctors.  Advance will oppose their giving opinion testimony about causation. *See Schneider v. Hertz Corp.*, 2007 WL 1362743, *1 (M.D.Fla. May 07, 2007) (because physicians not disclosed as experts are testifying as fact witnesses, their opinions must be based on facts of which they have personal knowledge and testimony regarding causation will not be permitted unless the determination of causation was necessary for treatment and the doctor's opinion is helpful to a clear understanding of his/her testimony.)

> ligaments and patellar tendon. Intact patella. Minimal residual post traumatic fluid as described above. [Emphasis added.]

After the Advance Auto Parts accident, Scipione's treating doctor ordered an MRI of her left knee.  The March 11, 2011 report was nearly identical to the October 27, 2009 MRI report:

> <u>Blunting of the free edge of the posterior horn of the medial meniscus that could be postsurgical although the patient states no history of surgery.</u>  In the absence of prior surgery this likely reflects a macerated tear of the free edge of the posterior horn of the medial meniscus.  Small amount of bone edema in the patella that suggests a patellar bone contusion. [Emphasis added.]

Because Scipione denied any prior injury to her knee, from that point forward her treating doctors linked what they saw in her knee to the February 23, 2011 accident.  They knew nothing about the 2009 MRI or the on-the-job injury Scipione had to her left knee.  They also knew nothing about another knee injury that preceded the 2009 accident.  Advance is still investigating an apparent 2008 injury, as well, but here is what is known so far:  Internal medicine doctor Chirag N. Patel, M.D. of Hernando Pasco Primary Care (not disclosed by Scipione) prescribed left knee x-rays on September 25, 2008.  On November 17, 2008, Scipione presented at Baycare Outpatient Imaging – Trinity (not disclosed by Scipione) for x-rays of her left knee (three views).  These are those x-rays:



CARLTON FIELDS, P. A.
Suite 4200 - 100 Southeast Second Street - Miami - Florida  33131-9101 - 305.530.0050

At this point, Advance is in the process of procuring records from Hernando Pasco Primary Care to ascertain what complaints Scipione had about her left knee that warranted x-rays.  There are a number of other previously undisclosed health care providers for which records are outstanding that may provide a concrete explanation for why the 2008 knee x-rays were required.  One thing is sure, however, and that is that Scipione withheld any information about medical care in 2008 for her left knee.

Scipione also was not candid about any injuries to her knee she sustained *after* the Advance Auto Parts accident.  Records from Medical Specialists of Tampa Bay show that on August 2, 2011: "Patient relates approximately two weeks ago she suffered a fall for no apparent reason at home onto her left knee."  Scipione failed to disclose that accident to Advance until February 14, 2013 when she answered an interrogatory asking for a description of the accident. *See* **Exhibit F**.  She wrote: "I was standing outside my home, about to walk my nephew to the park when my knee gave out and the next thing I knew I was on the ground."  Advance was foreclosed from asking Scipione anything about that accident at her deposition because she failed to disclose it.

Treating doctor Wendell Bulmer, D.O. performed a left knee arthroscopy on September 14, 2011.  As of October 12, 2011, Dr. Bulmer determined Scipione could return to work without restriction.  Six months later, however, Dr. Bulmer reported on April 4, 2012:  "She had been doing quite well.  She states she reached a plateau where there was mild residual pain.  She recently developed pain over the anterior medial aspect of the knee beginning approximately 3 weeks ago.  She denies recent repeat trauma.  She reports sensation of instability, which interferes with ADL and employment as a customer service representative for Macy's." Emphasis added.  Dr. Bulmer ordered another MRI of the left knee (performed on April 5, 2012).

That MRI revealed a new and different injury: "Tear of the posterior horn of the medial meniscus; joint effusion; cruciate and collateral ligaments are intact."

On April 25, 2012, Dr. Bulmer wrote: "The MRI reveals a lesion in the left knee that may represent a new injury. . . . Her present symptoms represent a new injury and will be addressed at another office. An appointment at another office has been arranged." Emphasis added. Six months later, Gary Levine, D.O. wrote on October 25, 2012:

> The patient now is not being seen by Dr. Bulmer any longer as he believes that this is a new injury. She had the second knee surgery for this particular incident in September with Dr. Bulmer and apparently, the patient is saying that her symptoms are not better. At this point, Dr. Bulmer had written that this may be a new injury, although the patient denies any falling or any other trauma to the left knee. She believes it is all related to the original injury. The patient is still in quite a bit of pain. Dr. Bulmer had been giving the patient pain medications. At this point, I told her that I can no longer give her any pain medications myself, but we can try some non-narcotic medicine until she gets further evaluated. [Emphasis added.]

It is evident that between October 12, 2011 and April 4, 2012, Scipione re-injured her knee, but she flatly denied falling or any other trauma. Dr. Bulmer, her own treating doctor (under a letter of protection), refused to render any further care to her for that very reason. He had already been misled by Scipione in the beginning when she denied any trauma before the Advance Auto Parts accident. She continued to mislead him, insisting as she has done in this litigation, that she had no pre-existing injury to her knee and that she did not re-injure her knee after February 23, 2011. Scipione has been playing fast and loose both in this case and in the course of her medical treatment.[15]

---

[15]Scipione's medical records todocument the foregoing that Advance procured by subpoena that will be submitted to the Court upon request.

C A R L T O N  F I E L D S, P. A.
Suite 4200 - 100 Southeast Second Street - Miami - Florida  33131-9101 - 305.530.0050

### C.     SCIPIONE MISLED ADVANCE AND THE COURT ABOUT HER CLAIMS FOR LOST WAGES AND FUTURE MEDICAL EXPENSES

Scipione's claims for lost wages and future medical expenses are now highly suspect because of the medical conditions and health care providers she failed to disclose and the injuries to her knee both before and after the Advance Auto Parts store accident.  For example, she makes the following calculation for her lost wages:  "926 hours lost @ $12.93 per hour from 1/4/11 to 3/14/11 and $13.72 per hour from 8/10/12 to 9/21/12 and $13.19 per hour from 7/21/11 to 10/18/11."  She said her future lost wages were "unknown."  Yet, her chronology of health care shows, first of all, that any lost wages prior to February 23, 2011 cannot be attributable to the Advance Auto Parts store accident.  She was recovering from her kidney stone surgery as of February 21, 2011, two days before the alleged accident, and was on the painkiller Vicodin. For lost wages later in 2011 and 2012, Scipione had a host of other medical conditions she failed to disclose that would explain absences from work.[16]

Moreover, she exaggerated the number of hours she worked in the first place when she calculated lost wages.  Scipione first insisted in her deposition that she worked "fulltime" at Macy's - - 40 hours a week with overtime.[17]  When confronted with payroll records, she was forced to admit that half the year she worked less than 20 hours a week at Macy's.[18] Scipione then acknowledged her calculation was not truthful:

---

[16] Scipione was so determined in her deposition to portray herself as healthy before the Advance Auto Parts store accident that she even denied receiving her diabetes diagnosis until 2012. November 15, 2012 Deposition of Shannon Scipione at p. 69.  One of her diagnoses at Mease Countryside Hospital on December 23, 2010, however, was diabetes.  As of January 4, 2011 she was taking the diabetes drug Metformin according to records from Urology Specialists of West Florida.

[17] *Id*. at pp. 23-24, 115-16.

[18] *Id*. at p. 116.

C A R L T O N  F I E L D S, P. A .
Suite 4200 - 100 Southeast Second Street - Miami - Florida  33131-9101 - 305.530.0050

Q Okay. So your testimony that you just gave me that most of the time you were working close to 40 hours a week is incorrect correct?

**A I -- I suppose so, yes.**

Q Okay. Why did you tell me that you were working close to 40 hours a week every week?

**A I actually thought I worked more than that.**

Q Well, you were wrong, right?

**A Yeah.**

Q And I asked you, did I not, if you didn't know the answer to the question to ask me to repeat it or rephrase it, right?

**A Yeah.**

Q Why did you give me that testimony?

**A I was pretty confident I had worked closer to 40 hours.**

Q How many of those weeks did you work less than ten hours?

**A Nine.**

Q How many?

**A Eleven.**

Q How many of those weeks did you work zero hours?

**A Four.**

Q Why?

**A I don't remember.**

Q So is it misleading in your mind now to suggest that you were working about 40 hours every week prior to this alleged accident?

**A Repeat it, please.**

\* \* \*

(The court reporter read as requested.)

C A R L T O N  F I E L D S, P. A.
Suite 4200 - 100 Southeast Second Street - Miami - Florida  33131-9101 - 305.530.0050

THE WITNESS: Yes.

BY MR. SCHWARTZMAN:

Q Okay. As you look back on it now, what do you think a closer weekly average would be for what you were really working?

**A Probably closer to 20 or 25.**[19]

Finally, in her initial disclosures, Scipione estimated her future medical expenses to be $35,000.  Had Advance not discovered all of her other knee injuries, Scipione would nearly have succeeded in hiding evidence that her future medical expenses were due to reasons other than the Advance Auto Parts store accident.

### D.   LEGAL ARGUMENT

The Eleventh Circuit has commented on the serious nature of untruthful testimony:

> Perjury, regardless of the setting, is a serious offense that results in incalculable harm to the functioning and integrity of the legal system as well as to private individuals.

*United States v. Holland*, 22 F.3d 1040, 1047 (11th Cir. 1994).  This sentiment has been voiced by virtually every other court that has considered the question.  *See, e.g., United States v. Cornielle*, 171 F.3d 748, 753 (2d Cir. 1999):

> Perjury goes to the very heart of the fair administration of justice. No legal system can long remain viable if lying under oath is treated as no more than a social solecism.  Swearing to tell the truth is a solemn oath, the breach of which should have serious consequences, especially where the perjurer tells his lie in an attempt to obtain money damages.

*See also Metropolitan Dade County v. Martinsen*, 736 So. 2d 794, 795 (Fla. 3d DCA 1999) ("It is well-settled law that a party who has been guilty of fraud or misconduct in the prosecution or

---

[19] *Id*. at pp. 117-18.

CARLTON FIELDS, P. A .
Suite 4200 - 100 Southeast Second Street - Miami - Florida  33131-9101 - 305.530.0050

defense of a civil proceeding should not be permitted to continue to employ the very institution it

has subverted to achieve her ends." ) Citations omitted.

When perjury is brought to the attention of a court, it is dealt with harshly, and dismissal

of claims is within the court's discretion. *See, e.g., Vargas v. Peltz*, 901 F. Supp. 1572, 1579

(S.D. Fla. 1995). The basis for the sanction comes from a court's inherent power to "manage its

own affairs, which necessarily includes the authority to impose reasonable and appropriate

sanctions on the parties to litigation before it. *Id. (citing Malatea v. Suzuki Motor Co. Ltd.*, 987

F.2d 1536, 1545-6 (11th Cir. 1993), *cert. denied*, 510 U.S. 863, 114 S.Ct. 181, 126 L.Ed. 2d 140

(1993)); *Derzack v. County of Allegheny, Pa.*, 173 F.R.D. 400, 411 (W.D. Pa. 1996) *aff'd,* 118

F.3d 1575 (3d Cir. 1997) ("A federal court has the authority to, and must not avoid the

responsibility for, monitoring the conduct of all litigants and attorneys who come before it.").

Dismissal is appropriate where:

> a party has sentiently set in motion some unconscionable scheme
> calculated to interfere with the judicial system's ability impartially
> to adjudicate a matter by improperly influencing the trier or
> unfairly hampering the presentation of the opposing party's claim
> or defense.

*Id. (citing Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)).

As in the cases cited, the evidence is that Scipione has perpetrated a fraud. She tried to

hide evidence of her medical care for a host of physical and mental conditions so that she would

appear the picture of health before the Advance Auto Parts accident. She tried to hide evidence

of prior injuries to her left knee. She tried to hide evidence of post-accident trauma to her left

knee. She hid from her doctors a history of care and treatment for her left knee and failed to

acknowledge to them even the existence of a prior MRI of her left knee - - with the intention of

misleading those doctors. She claimed lost wages by falsifying the number of hours she worked

CARLTON FIELDS, P.A.
Suite 4200 - 100 Southeast Second Street - Miami - Florida 33131-9101 - 305.530.0050

each week.  And the only time she would admit to anything was when she got caught.   Her

perjury in answers to interrogatories and her deposition is clear and convincing evidence that

Scipione set in motion an unconscionable scheme calculated to interfere with the judicial

system's ability to impartially adjudicate this matter by improperly influencing the trier or

unfairly hampering the presentation of Advance's  defense.  *See Aoude v. Mobil Oil Corp.*, 892

F. 2d at 1118 (5th Cir. 1989); *Vargas v. Peltz*, 901 F. Supp. at 1579.  Accordingly, Scipione's

claims should be stricken.

    As stated by the Court in *Chemtall Inc. v. Citi-Chem, Inc.*, 992 F.Supp. 1390, 1409-1410

(S.D. Ga. 1998):

> Those who lie, evade and fail to tell the whole truth obviously
> enjoy an advantage over honest litigants.  The victimized opponent
> winds up, as in this case, consuming substantial resources to
> respond to and "undo" the victimizer's lies and distortions.  Here
> plaintiffs did just that by resorting to third party discovery, then
> confronting King with contradictory documents, and even his own
> testimonial contradictions…
>
> In the meantime, the Court itself is prevented from actually
> reaching the merits of the case—as well as resolving other cases by
> having to stop and, as it has done here, exhaustively examine what
> is, at bottom, sanctionable perjury and fraud upon the Court.

    Scipione's parade of undisclosed medical care and accidents is a central issue in this case.

Advance is entitled to complete and honest discovery to determine whether the injuries Scipione

is claiming resulted solely from the alleged incident, as she claims, or whether they were a pre-

existing condition, or were sustained after the fact for which Advance cannot be held

responsible.  Scipione has attempted to manipulate discovery in this matter to increase her

chances for success and the value of her claim.  Such an abuse of the judicial system cannot be

tolerated and Scipione's claims should be stricken.

Accordingly, Advance moves for an order striking Scipione's claims as a sanction for her perjured testimony.  In addition, Advance seeks its fees incurred in connection with Scipione's deposition, all of the third-party discovery required to uncover the truth and the work required to prepare the present motion.[20]

Respectfully submitted,

CARLTON FIELDS, P.A.
**Attorneys for Advance Stores Company, Incorporated**
P.O. Box 019101
Miami, FL 33131-9101
Telephone:    (305) 530-0050
Facsimile:    (305) 530-0055
Email: eschwartzman@carltonfields.com

By: /s/ Emmet J. Schwartzman
    **EMMET J. SCHWARTZMAN**
    Florida Bar No. 710490

David J. Walz
Florida Bar No. 697273
CARLTON FIELDS, P.A.
4221 West Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
Telephone:    (813) 223-7000
Facsimile:    (813) 229-4133
Email:  dwalz@carltonfields.com

---

[20] Under Rule 37(a)(4), an "incomplete disclosure . . . must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  According to the rule, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). Exceptions to the award of expenses require substantial justification or some other basis to make the award unjust.  No such circumstances exist here.

## COMPLIANCE WITH LOCAL RULE 3.01(g)

The undersigned certifies that he conferred with plaintiff's counsel on February  27, 2013 in a good-faith effort to resolve the issues raised in this motion and was unable to do so.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 1, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on James S. Curtis, Esq., A Bales Professional Association, 9700 Dr. Martin Luther King, Jr. St., Suite 400, St. Petersburg, FL 33702 via transmission of Notices of Electronic Filing generated by CM/ECF.

By:  /s/ Emmet J. Schwartzman
**EMMET J. SCHWARTZMAN**
Florida Bar No. 710490